**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**ESAU ABSALOM GRUBBS**                                                        **PLAINTIFF**

**v.**                                                        **CIVIL ACTION NO. 1:13-cv-563-KS-MTP**

**DR. RON WOODALL and WILLIAM WELFORD**                               **DEFENDANTS**

## REPORT AND RECOMMENDATIONS

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment [31]. Having considered the Motion [31], the record, and the applicable law, the undersigned recommends that the Motion [31] be granted and that this action be dismissed with prejudice.

## BACKGROUND

On October 18, 2013, Plaintiff Esau Absalom Grubbs, proceeding *pro se* and *in forma pauperis*, filed his complaint pursuant to 42 U.S.C. § 1983.  The allegations in Plaintiff's complaint occurred while he was a post-conviction inmate at South Mississippi Correctional Institution ("SMCI") in Leakesville, Mississippi.[1]  In his complaint and as clarified in his testimony at the *Spears*[2] hearing, Plaintiff asserts claims against Dr. Ron Woodall and William Welford for the denial of adequate medical care.

According to Plaintiff, in July, 2013, Dr. Ron Woodall performed a chronic care[3] examination on Plaintiff and called Plaintiff a "sorry son of a bitch" for costing them so much

---

[1] Plaintiff is currently incarcerated at Central Mississippi Correctional Facility in Pearl, Mississippi.

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

[3] Plaintiff alleges that he received chronic care for hypertension, seizures, gout, and other ailments.

money.  Plaintiff also alleges that Dr. Woodall offered him a shot during the examination, but Plaintiff refused it because he believed it might harm him.

Additionally, Plaintiff asserts that he was prescribed Indocin or indomethacin, to treat his gout and Dilantin to treat his seizures.  Plaintiff alleges that on multiple occasions Dr. Woodall denied him these medications and instead provided other medications.  Plaintiff also alleges that Nurse William Welford stated that Plaintiff did not need the medication any longer and it could not be provided.

Plaintiff asserts that between July and October, 2013, he submitted sick call requests regarding pain in his leg, a cold, and varicose veins.  Plaintiff alleges that the medical unit had treated his varicose veins previously, but Nurse Welford responded to his sick call request by stating that the medial unit does not treat varicose veins.

As relief, Plaintiff seeks compensatory damages and injunctive relief in the form of an order directing Defendants to provide Plaintiff indomethacin and Dilantin.  Following a *Spears* hearing, during which Plaintiff clarified his claims and the Court ordered certain discovery, Defendants filed their Motion for Summary Judgment [31], arguing that they are entitled to a judgment as a matter of law.

## STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment will be granted only when "the record indicates that there is 'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  The Court must view "the evidence in the light most favorable to the nonmoving party." *Id.*

However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## ANALYSIS

Plaintiff's allegations amount to claims against Defendants for violations of the Eighth Amendment. "Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. App'x 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A plaintiff must show that a defendant's "response indicate[d] that the [defendant] subjectively intended that harm occur." *Thompson v. Upshur County*, 245 F.3d 447, 458-59 (5th Cir. 2001).

An official is not deliberately indifferent unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Id*. at 838. Plaintiff must "submit evidence that prison officials 'refused to treat him,

ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson*, 91 Fed. App'x at 965 (quoting *Domino*, 239 F.3d at 756). "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986). Plaintiff is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Further, a prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

In support of their Motion for Summary Judgment [47], Defendants Dr. Woodall and Welford submitted affidavits, a transcript of the *Spears* hearing, and Plaintiff's medical records. As previously mentioned, Plaintiff complains that Defendants denied him adequate medical care in relation to his seizure medication, Dilantin. Plaintiff's medical records demonstrate that on July 22, 2013, Dr. Woodall performed a chronic care examination on Plaintiff. (Medical Records [36] at 786-92.) Dr. Woodall noted that Plaintiff suffers from a seizure disorder, which was treated with Dilantin at the time. ([36] at 786-92.)

Thereafter, Plaintiff continued to receive Dilantin to treat his seizure disorder. ([36] at 797-98; 814; 817; 836; 855; 866; 870; 887; 922.) On October 21, 2013, a nurse practitioner indicated that Plaintiff's Dilantin levels were good and that he had not experienced a seizure in ten months. ([36] at 817.) On April 15, 2014, another nurse practitioner checked Plaintiff's

Dilantin levels and noted that he had not experienced a seizure in more than a year. ([36] at 870.) Plaintiff continued receiving Dilantin throughout 2014 and into 2015. ([36] at 887-88.)

Plaintiff also complains that Defendants denied him indomethacin.  At the time of the July 22, 2013, chronic care examination, Plaintiff was also being prescribed indomethacin, an NSAID which can be used to treat gout. ([36] at 793.)[4]  Plaintiff continued receiving indomethacin until October, 2013. ([36] 797-98; 814.)  On November 24, 2013, Plaintiff received Solu-Medrol, an anti-inflammatory glucocorticoid. ([36] at 825.)  On February 10, 2014, Plaintiff was prescribed naproxen and ketorolac, NSAIDs which can be used to treat gout. ([36] at 848-49.)  Plaintiff was also provided a wheelchair. ([36] at 850-51.)  Plaintiff continued receiving naproxen in March and April, 2014. ([36] at 855-56; 866; 871.)

This cycle of differing medications continued.  On August 4, 2014, Plaintiff was again prescribed indomethacin. ([36] at 950.)  On October 29, 2014, Plaintiff was prescribed ibuprofen. ([36] at 922-23.)  On November 16, 2014, Plaintiff received Solu-Medrol. ([36] at 913.)  On November 20, 2014, Plaintiff's ibuprofen prescription was discontinued and replaced with indomethacin. ([36] at 906.)  Finally, on February 25, 2015, Plaintiff was prescribed an analgesic balm. ([36] at 876-77.)

 Plaintiff also complains that, between July and October 2013, Defendants denied him adequate medical care for his varicose veins.  On September 12, 2013, Dr. Woodall approved Plaintiff's request for TED hose, which he received on October 9, 2013. ([36] at 805-07; 812.) According to Dr. Woodall, TED hose are "compression stockings used to treat veinous disorders

---

[4] Plaintiff had previously been prescribed indomethacin in May of 2012 and June of 2013. ([36] at 633-34; 776-77.)

and swelling in the legs and feet." (Dr. Woodall Affidavit [31-3] at 1.)  Dr. Woodall also states that compression stockings have been provided to Plaintiff for years. ([31-3 at 1.)

In order to succeed on his claims, Plaintiff must demonstrate that Defendants were deliberately indifferent to his serious medical needs. *See Davidson*, 91 Fed. App'x. at 964. Plaintiff has failed to make this showing.  Based on the evidence before the Court, Defendants never refused to treat Plaintiff, ignored his complaints, or denied him medical treatment.

Regarding Dilantin, Plaintiff's medical records demonstrate that he continuously received this medication for his seizures.  In fact, medical professionals routinely examined the level of Dilantin in his body.  Moreover, the record demonstrates that Plaintiff seizures were controlled during the relevant time period.  Regarding indomethacin, Dr. Woodall, in his sworn statement, explains that he tries not to prescribe this medication for long-term use because of its side effects. ([31-3] at 1-2.)  Dr. Woodall points out and the record demonstrates that Plaintiff was provided multiple medications in place of continuous indomethacin use. ([31-3] at 2.)

The record also demonstrates that Plaintiff was provided compression stockings to treat his varicose veins.  Moreover, Plaintiff has not presented evidence showing that his varicose veins represented a serious medical need.  Medical professionals at SMCI accessed Plaintiff, consistently treated him, provided him multiple medications, and adjusted those medications. Thus, the record indicates that Defendants were not deliberately indifferent to Plaintiff's serious medical needs. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (holding that "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmates' allegations of deliberate indifference.").

In summary, medical professionals at SMCI provided Plaintiff treatment for his seizure

disorder, gout, and varicose veins, and Plaintiff disagrees with the medical professionals' treatment decisions.  However, mere disagreement with a course of medical treatment does not constitute deliberate indifference. *See Norton*, 122 F.3d at 292.  Even assuming Defendants should have prescribed different medication or provided different treatment, such conduct, at most, constitutes negligence, which does not amount to deliberate indifference. *See Daniels*, 474 U.S. at 333-34.  "The fact that he did not receive the specific kind of medication which he thought was best suited to treat his condition does not show deliberate indifference to his serious medical needs." *French v. Quarterman*, 2010 WL 998354, at *7 (E.D. Tex. Jan 22, 2010).

Finally, Plaintiff also alleges that Dr. Woodall harassed him by calling him "sorry son of a bitch" for costing them so much money.  However, "[t]hreats, harassment, and verbal abuse are not actionable under § 1983." *Hunter v. Harris*, 2010 WL 3713444, at *22 (S.D. Miss. Aug. 5, 2010) (citing *Bender v. Brumley*, 1 F.3d 271, 274 (5th Cir. 1993); *U.S. v. Bigham*, 812 F.2d 943, 949 (5th Cir. 1987); and *Boettner v. Raimer*, 122 Fed. App'x. 711, 713 (5th Cir. 2004)).  While Dr. Woodall's bedside manner, as alleged, may not have been to Plaintiff's liking, this does not amount to a constitutional violation.

The record demonstrates that Defendants were not deliberately indifferent to Plaintiff medical needs, and Defendants are entitled to judgment as a matter of law.

## CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the undersigned recommends that:

1.     Defendants' Motion for Summary Judgment [31] be GRANTED and

2.     This action be dismissed with prejudice.

7

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party.  The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected.  *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 11th day of January, 2016.

s/ Michael T. Parker
United States Magistrate Judge

8